**UNITED STATES of America,**

v.

**Kenneth ELLIOTT, Defendant.**

**No. CR. 104CR453GLS.**

United States District Court, N.D. New York.

April 4, 2005.

Glenn T. Suddaby, United States Attorney (Paul D. Silver, Esq., Assistant U.S. Attorney, of Counsel), Albany, NY, for United States.

Kindlon, Shanks Law Firm (Terrence L. Kindlon, Esq., Kent P. Sprotbery, Esq., of Counsel), Albany, NY, for Defendant Elliott.

### Decision and Order

SHARPE, District Judge.

### I. Introduction

Pending is the omnibus pretrial motion of defendant, Kenneth Elliot, who seeks the following relief: (1) dismissal of the indictment as insufficient pursuant to the Fifth Amendment; (2) *in camera* review of the grand jury minutes and dismissal of the indictment because of insufficient evidence and improper legal instructions; (3) suppression of his statements, and evidence seized from his person, vehicle and house; (4) disclosure of *Brady* material; (5) early release of Jencks Act material; (6) disclosure of the government's intention to use prior bad acts or convictions; (7) preservation of original police notes; (8) discovery; and, (9) leave to file additional motions as necessary to address undisclosed discovery and to supplement the current motion. At the conclusion of oral argument, the court stated that it would supplement its oral rulings with a written decision. This is that decision.

Procedurally and substantively, this motion raises fundamental concerns regarding the parties' compliance with this District's Local Rules and the standard Criminal Pretrial Order ("CPO") issued in this case. Because the court will enforce the Local Rules and the CPO in the future, it seizes this opportunity to remind the parties, and more generically, the government and defense bar, of their mandated requirements.[1]

### II. Background

On September 17, 2004, Elliot was indicted for participating in a cocaine distribution conspiracy. After his arrest and

arraignment, the court issued its standard CPO. *See* CPO, Dkt. No. 4.

On December 17, the parties filed a stipulation and proposed order seeking a sixty day exclusion from the Speedy Trial Act, and the court executed the order. Citing the interests of justice, the stipulation sought time for the parties to complete discovery and prepare motions. The order extended the CPO's motion filing deadline and plea or trial date. Otherwise, neither the stipulation nor proposed order addressed the specific disclosure deadlines or other obligations contained in the CPO, the Local Rules, or for that matter, the Federal Rules of Criminal Procedure. *See* Stipulation & Order, Dkt. No. 9.

### III. Rules Governing Pretrial Procedures in Criminal Cases

Rather than invent new rules governing criminal pretrial procedures, the court will enforce existing ones. Recognizing that enforced compliance may be novel, the court provides fair notice that everyone must adjust to the novelty. Having provided that admonition, the court preliminarily turns to the authority of the rules, their application to discovery, other pretrial matters and motion practice, and to suggestions for avoiding unnecessary judicial interference in the parties' pretrial relationship.

### A. Authority of the Rules

Criminal procedures are governed by a combination of the following: (1) Federal Rules of Criminal Procedure; (2) Local Rules of Criminal Procedure; (3) General Orders;[2] (4) Criminal Pretrial Orders; (5)

---

1. This decision addresses pretrial procedures, not all aspects of criminal practice. Nonetheless, the court expects complete familiarity with all requirements of the Local Rules of

Criminal Procedure, General Orders and the standard CPO.

2. The Northern District's Local Rules of Criminal Procedure and General Orders are

specific, case-related orders; and, (6) other so-called "standing orders."[3] *See* Fed. R. Cr. P. 1(a)(1), 57(a)(1) and (b); L.R. Cr. P. 1.1; CPO, ¶ II(A).

While no rule should be so strictly enforced that parties lose rights because of an unintentional failure to comply, sanctions may be appropriate when parties have actual notice of the rules and do not comply. *See* Fed. R. Cr. P. 57(a)(2) and (b); CPO, Notice Foll. ¶ VIII.[4] Although the Local Rules and orders already provide actual notice, this decision supplements that notice.

### B. *Discovery and Other Pretrial Matters*

The CPO parallels the Local Rules, and governs discovery except in extraordinary circumstances. CPO, ¶ II(A); L.R. Cr. P. 14.1(a); *see also* Fed. R. Cr. P. 57 (local rules and orders may supplement the Federal Rules of Criminal Procedure). Within fourteen (14) days of arraignment, unless the court alters the date for good cause, the government must disclose for inspection and copying all Rule 16(a) information, and file a notice of its intention to use this evidence. L.R. Cr. P. 14.1(b)(1); CPO, ¶ II(B)(1); *see also* Fed. R. Cr. P. 16(a)(1) (defendant's statements and prior criminal record, documents and objects, reports of examinations and tests, and experts), and 12(b)(4) (notice of intent).[5] These disclosure obligations alter the demands required by Rules 12(b)(4) and 16(a) of the

Federal Rules of Criminal Procedure, and are designed to promote the efficient exchange of discovery, to eliminate routine and unnecessary discovery motions, and to afford defendants the opportunity to file suppression motions. L.R. Cr. P. 14.1(a) and (b)(1); CPO, ¶ II(A). Defendants' reciprocal obligations are also governed by these rules. *Cf.* L.R. Cr. P. 14.1(c); CPO, ¶ II(C) (requiring reciprocal disclosure twenty-one (21) days after arraignment); and, Fed. R. Cr. P. 16(a)(1)(C)(D) and (E), and (b)(1).

The Local Rules and CPO also govern both the timing of disclosure, and the disclosure itself, of many other routine, pretrial requests, some of which are the subject of Elliot's motion. Thus, within fourteen (14) days of arraignment, unless the court sets another date for good cause, the government must disclose for inspection and copying all information and material which may be favorable to the defendant on the issues of guilt or punishment, and must advise the defendant of its intention to introduce Rule 404(b) evidence in its case-in-chief at trial. L.R. Cr. P. 14.1(b)(2–3); CPO, ¶ II(B)(2–3); *see also* Fed.R.Evid. 404(b). As to 404(b), the CPO supersedes the defendant's obligation to demand the notice. L.R. Cr. P. 14.1(b)(3); CPO, ¶ II(B)(3); *see also* Fed.R.Evid. 404(b) ("upon request of the accused" ("demand")).

Fourteen (14) days before trial, unless the court alters the date for good cause,

---

readily available from the Clerk's Office, and from the Northern District's web site. *See* <www.nynd.uscourts .gov>.

**3.** The court realizes that many judges in this District have exercised their discretionary authority to modify criminal procedures. However, this court will rely on the rules, not standing orders, and will depart from the rules only in the interests of justice.

**4.** Several specific rules also prescribe noncompliance sanctions. *See e.g.,* Fed. R. Cr. P. 12(b)(3)(A-E) (waiver of various pretrial matters), 12(e) (waiver of defenses, objections and requests), and 16(d)(2) (discovery sanctions).

**5.** Currently, the Local Rules and CPO incorrectly cite Rule 12(d) as authority for the notice provision. The Northern District's Board of Judges is aware that a correction is necessary in this year's Local Rule revisions.

the government must provide the defendant *Giglio* material, and the criminal history of testifying informants. L.R. Cr. P. 14.1(d)(1–2); CPO, ¶ II(D)(1–2). Before trial (on a reasonable date otherwise unspecified), the government must transcribe grand jury testimony and the parties must exchange 3500 material. L.R. Cr. P. 14.1(e); CPO, ¶ II(E). Furthermore, the government must advise agents and officers to preserve all rough notes. L.R. Cr. P. 14.1(f); CPO, ¶ II(F).

## C. *Motion Practice*

Motions are generally governed by Rules 12 and 47 of the Federal Rules of Criminal Procedure, but those rules may be modified. *See* Fed. R. Cr. P. 57. Rule 12 itself anticipates that courts may set motion filing deadlines (*see* Fed. R. Cr. P. 12(c)), and this District has done so. All motions must be served and filed within four (4) weeks of the date the CPO is issued, and must comply with Local Rule 12.1. CPO, ¶ III(A).[6] Oral argument is required unless otherwise ordered by the court. CPO, ¶ III(A).

By Federal Rule, the court may, *sua sponte*, or upon motion for good cause made before the expiration of the allotted time, or because of excusable neglect after the expiration of the allotted time, extend deadlines.[7] Fed. R. Cr. P. 45(b)(1)(A-B) and (2). In this District, motions may be filed after four weeks only by court order upon a showing of good cause for the delay. CPO, ¶ III(C). Extensions of motion filing deadlines are subject to judicial discretion, extension requests must be written and recite the reason for the request, and any party seeking an extension must first contact opposing counsel.[8] L.R. Cr. P. 12.1(d).

A party applying for an order must do so by motion.[9] Fed. R. Cr. P. 47(a). The moving party must specifically articulate the relief requested and must set forth a factual basis which, if proven true, would entitle the moving party to the relief requested. L.R. Cr. P. 12.1(a); *see also* Fed. R. Cr. P. 47(b).

After filing a motion, the moving party must confer with opposing counsel and report to the court, in writing, the following: (1) whether the parties agree or dis-

6. Procedurally, motions have additional timing and content requirements: motions must be filed and served no less than thirty-one (31) calendar days prior to the motion return date (L.R. Cr. P. 12.1(a); CPO, ¶ III(A); *cf.* Fed. R. Cr. P. 47(c) (requiring filing 5 days before return date, unless court sets different date)); responses must be filed and served not less than seventeen (17) calendar days before the motion return date (L.R. Cr. P. 12.1(a)); replies may be filed, only by leave of court, served not less than eleven (11) calendar days before the motion return date, and are limited to 10 pages (L.R. Cr. P. 12.1(a); General Order #28 (May 1, 2004)); affidavits from counsel are not required (L.R. Cr. P. 12.1(f); *cf.* Fed. R. Cr. P. 47(b) and (d) (*contra* as to affidavit requirement)); parties must electronically file a memorandum of law of twenty-five (25) pages or less although the court may grant permission to exceed the page limit, on application, obtained before filing (L.R. Cr. P.

12.1(a); CPO, ¶ III(E)); if legal authority can be concisely cited in the body of the motion, a separate memorandum of law is unnecessary (L.R. Cr. P. 12.1(a)); and, all memoranda of law exceeding five (5) pages must contain a table of contents and parallel citations (L.R. Cr. P. 12.1(a)).

7. There are exceptions. *See* Fed.R.Cr.P. 29 (directed verdict), 33 (new trial), 34 (arresting judgment), and 35 (correcting or reducing a sentence).

8. The current practice of incorporating an extension request in a stipulation and proposed order seeking an exclusion under the Speedy Trial Act satisfies this requirement.

9. In appropriate circumstances and with advance judicial permission, the court will permit letter-motions.

agree that the requested relief is appropriate; (2) whether a hearing is necessary to resolve factual disputes; and (3) whether oral argument is necessary. CPO, ¶ III(B).

There are additional requirements related to discovery, suppression hearings, and the speedy trial clock. No discovery motion may be filed without first conferring with opposing counsel. L.R. Cr. P. 14.1(g); CPO, ¶ II(G). The court will not consider a discovery motion unless it is accompanied by an attorney certification or notice stating that a pre-motion conference was conducted with opposing counsel, and the certification or notice recites the moving party's good faith efforts to resolve, eliminate or reduce the area of controversy, and arrive at a mutually satisfactory resolution. L.R. Cr. P. 12.1(b) and 14.1(g); CPO, ¶ II(G). Motions seeking discovery of matters encompassed by the CPO are limited to the following: (1) motion to compel; (2) motion for a protective order; or, (3) motion for an order modifying discovery. L.R. Cr. P. 14.1(g); CPO, ¶ II(G); *see also* Fed. R. Cr. P. 16(d).

Regarding suppression motions, if the parties agree that a hearing is necessary and the motion papers conform to the requirements of Local Rule 12.1(a), the court will schedule a hearing. If the government contests the necessity of a hearing, the defendant's motion must be accompanied by an affidavit, based upon personal knowledge, setting forth facts which, if proven true, would entitle the defendant to relief. L.R. Cr. P. 12.1(e).

As to the Speedy Trial Act, all motions and other papers must show on the first page beneath the file number, the speedy trial exclusions applicable to the action sought or opposed by the motion or other paper, and the amount of resulting excludable time. L.R. Cr. P. 12.1(c). Any delay from the date a motion is filed through

conclusion of its hearing, or other prompt disposition, is excluded from the speedy trial clock. CPO, ¶ III(D); *see* 18 U.S.C. § 3161(h)(1)(F).

### D. *Suggested Procedures*

The court will not micro-manage the pretrial relationship between the defense bar and the government. Given the extraordinary variables often unique to each case, the court respects the parties' ability—in the best interests of their respective clients—to negotiate the timing and content of pretrial disclosures. However, the parties must recognize their obligation to seek judicial authorization for variances in the CPO and Local Rules, and should recognize the need to seek judicial intervention when the rules strain their relationship.

While the court should not have to explain why parties must comply with judicial rules and orders, it nonetheless offers several observations. First and foremost, the Local Rules and the CPO are designed to avoid the wasted time and energy associated with the kind of motion currently pending. So too, the rules create a process for the exchange of information which facilitates the interests of justice for both parties, and permits the court to efficiently manage the case. Furthermore, the court must remain cognizant of other interests such as the pretrial detention of related defendants, the speedy trial clock and calendar control and congestion.

Authorized variances from pretrial disclosure rules may be simply obtained in various ways. As frequently happens now, parties recognize the complexities unique to their case and seek extensions of the speedy trial clock by stipulation and proposed order. They could simply incorporate alternatives to *all* of the pretrial disclosure requirements in the stipulation which would become effective when or-

dered by the court. So too, they could seek the extensions by joint letter. Regardless of the method employed, the court expects that in the future the parties will either comply with the disclosure requirements recited in the CPO and Local Rules, or seek a judicially authorized variance.

Naturally, where the parties are at odds over the application of the rules, they are free to seek judicial intervention. Without exhausting the means for doing so, the court notes several possibilities. The court will conduct a conference if requested in a joint letter which notes the areas of disagreement. If either the defense or prosecution is paralyzed by the inaction of the other, the aggrieved party may bring the problem to the court's attention by letter, and the court will address the problem by conference or otherwise. And, parties are free to file motions to compel, for a protective order or for an order modifying discovery.

Accordingly, on and after May 1, 2005, the court expects full compliance with the Local Rules and the CPO as they relate to pretrial disclosures and motion practice.[10]

## IV. *The Defendant's Motions*

### A. *Compliance with the Rules*

Before addressing the substance of Elliot's motion, the court turns to the parties' compliance with the rules. As stated during oral argument, the court casts no aspersion on the parties for having failed to abide by the rules. Like most practition-ers, they had no advance notice that the court would adhere to the rules, and the court has already observed that historically, at least in the Albany filing division, those rules have been observed in the breach.

As to disclosure of discovery material, Elliot seeks: (1) all transcripts and/or copies of recordings and all audio/videotape recordings; (2) all transcript drafts and notes of those preparing transcripts; (3) all voice exemplars; (4) any and all records regarding the decision to prosecute federally rather than in state courts; (5) consensual recordings; (6) designation of which recordings, or portions thereof, that will be used by the government at trial; (7) all recordings relating to arrests, searches, seizures, interrogation, and prosecution; (8) all court documents and transcripts; (9) all police reports; and, all search and arrest warrants, applications and returns.

Regarding these demands, and to the extent they reflect valid Rule 16 requests, those materials should have been disclosed by the government on or before December 6, 2004, fourteen days after arraignment.[11] So too, the government should have disclosed its intention to use those materials in its case-in-chief. Furthermore, within the same fourteen days, the government was required to disclose *Brady* material then in its possession, and advise the defendant of its intention to use Rule 404(b) evidence. Lastly, the government had a

---

**10.** Should any practitioner believe the rules or order should be altered, he or she is free to bring proposed changes to the court's attention, and it will submit them to the Board of Judges for consideration.

**11.** As the court notes in the substantive treatment of Elliot's motion, not all of his requests are supported by Rule 16 jurisprudence. However, the court has been provided no factual basis to assess what, if any, specific demands Elliot may have made to the government during the course of their negotiations, and the extent to which those demands may have exceeded Rule 16 authority. In any event, Elliot did not seek judicial intervention to enforce whatever demands he made, nor did the government seek a protective order limiting disclosure.

standing obligation under the CPO to direct its agents to preserve all rough notes. As of March 11, 2005 (the motion return date), there had been little, if any, compliance with these requirements.

On December 17, 2004, the parties did submit a stipulation seeking to exclude sixty days from the speedy trial clock, citing the need to complete discovery and file motions. By that time, the disclosure deadline had expired seventeen days earlier. Furthermore, the stipulation recited no specific or generic extension date for the government's disclosure nor any deadline for the defendant's reciprocal disclosure. Beyond the speedy trial stipulation, neither party sought judicial authorization to extend the disclosure requirements nor did the defendant seek judicial intervention regarding the government's failure to disclose.

When Elliot filed his instant motion, although timely, it did not substantially comply with the motion filing requirements. It was calendared wrong and the moving papers and response failed to recite applicable speedy trial exclusions. More importantly, it contained no written report reflecting the parties agreement or disagreement concerning the requested relief, whether factual hearings were necessary, and whether oral argument was necessary. As to discovery, there was no attorney certification or notice attesting to a pre-motion conference nor to the good faith efforts to reduce the areas of controversy, nor was the motion limited to discovery compulsion, a protective order, or an order modifying discovery.

As to suppression issues, the motion did not recite the parties' agreement as to whether a hearing was necessary. Consequently, Elliot failed to submit an affidavit based upon personal knowledge setting forth facts, which if true, would entitle him to relief. Naturally, he can hardly be faulted failing to comply since he had received nothing in discovery that would have assisted in preparing the affidavit nor did he then know what evidence the government would seek to introduce at trial in its case-in-chief.

There are a variety of sanctions the court could impose for rule violations. Obviously, and for the reasons already stated, no sanctions are appropriate in this case. However, future litigants should recognize the risks if they fail to comply. The court could flatly refuse to consider non-compliant motions. CPO, ¶ II(G) and Notice foll. ¶ VIII; L.R. Cr. P. 12.1(b), 14.1(g). Defenses, objections or requests could be waived. Fed. R. Cr. P. 12(b)(3) and (e). The court could permit discovery in a manner it prescribes, prohibit the introduction of evidence at trial, or enter any other just order. Fed. R. Cr. P. 16(d)(2). And, of course, the court could use its inherent authority to impose a host of penalties, including monetary sanctions.

## B. *Summary of Oral Rulings*

Substantively, most of the issues raised by Elliot were resolved during oral argument, either by court decision or government concession. The court begins with a summary before analyzing the three that remain.

As to statements by the defendant and searches of his person, vehicle and home, the government was ordered to produce all arrest and search warrants and applications, written statements of the defendant or any writing or document reciting statements attributable to him, or the substance of any of his oral statements made to one known by him to be a police officer. Contemporaneously, the government was ordered to disclose its intention to use any evidence of the defendant's statements or evidence generated by search of any kind. Additionally, the government agreed to

supply the defense with police reports. The court scheduled a suppression hearing, and granted the government permission to seek a protective order insofar as disclosure might compromise the integrity of undercover police officers.

As to discovery, and in addition to the arrest and search warrants and applications and police reports already mentioned, the court ordered the government to file a notice of intent to use, and disclose, the following: (1) transcripts and/or copies of recordings and all audio and videotape recordings; (2) transcript drafts and notes of those preparing transcripts; (3) voice exemplars; (4) consensual recordings; (5) designation of which recordings, or portions thereof, that will be used by the government at trial; (6) recordings relating to arrests, searches, seizures, interrogation, and prosecution; and, (7) court documents and transcripts.

As to *Brady* material, the government conceded its obligations under the Local Rules and CPO, and has either complied or recognizes its continuing obligation to comply. Therefore, the government must immediately disclose any *Brady* material currently in its possession, and continue to disclose as such material may come into its possession or is subject to its knowledge and control.

As to Rule 404(b) evidence, the government acknowledged its obligations under the Local Rules and CPO, and asserted that it is aware of no such evidence, but did clarify that Elliot made admissions concerning prior bad acts. To the extent the government, upon further inspection of its files, may seek to introduce Rule 404(b) evidence, it is hereby ordered to disclose that intention to the defense within one (1) week of the date of this order, subject to preclusion should it fail to do so.

As to the preservation of agent notes, the government recognized its obligation under the Local Rules and CPO and was ordered to instruct law enforcement officers to comply.

As to Jencks Act material, and except for the police reports the government agreed to produce, the court denied Elliot's early disclosure motion insofar as it sought immediate disclosure, and otherwise reserved decision on the timing of disclosure until the final pretrial conference.

As for permission to file further motions, the court granted Elliot's request insofar as such motions might address unforseen issues generated by the government's late disclosures, but denied the request insofar as the application sought leave to supplement or relitigate issues already raised.

Finally, the court turns to an unresolved discovery issue, dismissal of the indictment, and the grand jury proceedings.

### C. *Discovery of Internal Prosecution Memoranda and Records*

■ Elliot seeks "any and all records regarding the decision to prosecute federally rather than in state courts." Although the facts supplied by the parties are sparse, Elliot's arrest appears to have been the by-product of cooperation between federal and state authorities. Presumably, he seeks records regarding the executive decision to prosecute federally rather than in state court.[12] Since Elliot has offered no factual support demonstrating that such records are material to any defense he intends to raise or to guilt or punishment, his request is denied.

---

**12.** The court could not further explore the basis for the request since the motion was filed by Mr. Kindlon, but argued by Mr. Sprotbery.

The court's authority to order discovery is governed by the Federal Rules and the *Brady* doctrine. *See* Fed. R. Cr. P. 16; *United States v. Armstrong,* 517 U.S. 456, 461, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Rule 16(a) specifies the information subject to discovery, and internal government documents are not included. In fact, Rule 16(a)(2) specifically provides:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made ... in connection with investigating or prosecuting the case.

■■■ Unless evidence the defendant seeks is material, disclosure is not required by Rule 16(a). *Armstrong* at 462, 116 S.Ct. 1480; *see also* Fed. R. Cr. P. 16(a)(1)(E)(i). Evidence is material if "it could be used to counter the government's case or to bolster a defense..." *United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir.1993). Stated another way, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir.1991). The defendant must establish a *prima facie* showing of materiality. *United States v. Rigas,* 258 F.Supp.2d 299, 307 (S.D.N.Y.2003) (citation omitted). If a request seeks immaterial internal government documents, Rule 16(a)(2) precludes disclosure. *Armstrong* at 462–63, 116 S.Ct. 1480. Absent materiality, attempts to access internal government documents routinely fail. *See Gollaher v. United States,* 419 F.2d 520, 528 (9th Cir.

1969); *United States v. Berrigan,* 482 F.2d 171, 181(3d Cir.1973).

The Supreme Court has long recognized that as long as prosecutors have probable cause to believe a defendant has committed an offense, the decision whether or not to prosecute, and what charge to bring, is entirely discretionary. *Armstrong,* 517 U.S. at 464, 116 S.Ct. 1480 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). Furthermore, " '[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.' " *Armstrong* at 465, 116 S.Ct. 1480 (quoting *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). The decision to prosecute in a federal or state forum is subject to these same principles. The court is aware of no authority to the contrary, and Elliot has cited none.

■■ "Materiality" also governs the *Brady* analysis. Thus, "the suppression of evidence by the prosecution of evidence favorable to the accused ... violates due process where the evidence is material either to guilt or punishment ...." *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. 1194. Elliot has alleged no basis to believe that the forum decision has any material bearing on issues of guilt or punishment. As the Supreme Court has repeatedly stated, there is no constitutional duty requiring that a prosecutor routinely deliver his entire file to the defense. *Arizona v. Youngblood,* 488 U.S. 51, 55, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *California v. Trombetta,* 467 U.S. 479, 488–89 n. 8, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Moore v. Illinois,*

408 U.S. 786, 795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

Since Elliot's request seeks immaterial information, it is beyond the scope of either Rule 16 or *Brady,* and is denied.

### D. *Fifth Amendment Sufficiency of the Indictment*

■■ Citing the Fifth Amendment, Elliot moves to dismiss the indictment as insufficient because it merely tracks the statutory language.[13] Rule 7(c)(1) of the Federal Rules of Criminal Procedure governs the nature and content of indictments, and provides, *inter alia:* "The indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ...." An indictment satisfies Fifth Amendment scrutiny if it contains the elements of the offense charged with sufficient precision to protect against prosecution for crimes based on evidence not presented to the grand jury, and informs the defendant of the charges he must meet with enough detail that he may plead double jeopardy in a future prosecution. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Walsh,* 194 F.3d 37, 44 (2d Cir.1999) (citation omitted). This Circuit has consistently upheld indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime. *Walsh* at 44 (citing, *inter alia, United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975)).

■ Furthermore, motions to dismiss are generally inappropriate mechanisms to assess evidentiary sufficiency. Nonetheless, the court must examine the indictment as a whole, accept as true the facts alleged, and determine only whether the indictment is valid on its face. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Walsh* at 44; *United States v. Alfonso,* 143 F.3d 772, 777 (2d Cir.1998).

■ A motion for lack of specificity will be denied in the absence of any showing as to prejudice where additional facts may be obtained by a bill of particulars or discovery. *Walsh* at 44 (citing *United States v. McClean,* 528 F.2d 1250, 1257 (2d Cir.1976)). While a bill of particulars or discovery cannot save a defective indictment, if an indictment is even minimally sufficient, a court may look to the whole record in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant had an adequate opportunity to prepare his defense. *Walsh* at 45 (citations omitted). As to conspiracy, the government need not set out with precision each and every act committed in furtherance of the conspiracy. *United States v. LaSpina,* 299 F.3d 165, 182 (2d Cir.2002).

While the instant indictment is sparse in detail, it does pass Fifth Amendment scrutiny. It recites the approximate time and location of the conspiracy, specifies the object of the conspiracy, alleges an illicit agreement between the defendant and others, and cites the underlying statutory authority. *See United States v. Macklin,* 927 F.2d 1272, 1276 (2d Cir.1991); *United States v. Benjamin,* 72 F.Supp.2d 161, 168–69 (W.D.N.Y.1999). It protects the defendant from Double Jeopardy and, together with the discovery ordered, permits him to adequately prepare for trial. Accordingly, Elliot's motion to dismiss the

---

**13.** While Elliot's notice of motion and accompanying affidavit do not clearly raise this argument, his memorandum of law does so.

Presumably, he relies on Fed. R. Cr. P. 12(b)(3)(B) as authority for his motion. *See* Dkt. No. 10.

indictment as insufficient pursuant to the Fifth Amendment is denied.

### E. *Grand Jury Proceedings and Dismissal of the Indictment*

 Elliot's motion seeks *in camera* review of the grand jury minutes followed by dismissal of the indictment because of insufficient evidence before the grand jury and erroneous legal instructions. As amplified during oral argument, the assumptions for his argument are essentially as follows: the indictment charges a cocaine conspiracy, but fails to identify a specific person with whom Elliot conspired; the narcotics transaction which served as the underlying predicate for the conspiracy charge was between Elliot and an undercover police officer; a defendant cannot be legally convicted of conspiring with a police officer alone or with one who is in a buyer-seller relationship with the defendant; and therefore, the evidence before the grand jury was insufficient, the legal instructions must have been invalid, and the court should review the grand jury minutes to verify these assumptions. Legally and factually, Elliot's logic is erroneous.

The indictment charges that Elliot and others conspired to distribute cocaine. As he argues, the indictment does not identify the others, but as he fails to point out, neither does it identify an undercover police officer or one in a buyer-seller relationship as one of the "others." The government's response asserts that Elliot told the undercover police officer that he and his associates could purchase fifty kilograms of cocaine which they could distribute in two weeks. *See* Government Resp., Dkt. No. 11.

 It is axiomatic that an indictment returned by a legally constituted and unbiased grand jury is valid on its face, and is enough to call for a trial of the charge on the merits. *United States v. Williams*, 504 U.S. 36, 54, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 261, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 409, 100 L.Ed. 397, *reh. denied*, 351 U.S. 904, 76 S.Ct. 692, 100 L.Ed. 1440 (1956); *United States v. Torres*, 901 F.2d 205, 232 (2d Cir.1990). In fact, grand jury proceedings are presumed lawful and regular. *Torres*, 901 F.2d at 232 (citing *Hamling v. United States*, 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).

 Disclosure of grand jury proceedings is available only by court order, and a defendant bears the burden of establishing a "particularized need" or "compelling necessity" for disclosure which outweighs the policy of grand jury secrecy. Fed. R. Cr. P. 6(e); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *accord In re Petition of Craig*, 131 F.3d 99 (2d Cir.1997). Unspecified allegations of impropriety and mere speculation do not satisfy this heavy burden. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Consequently, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." *Torres*, 901 F.2d at 233. Additionally, indictments are not open to challenge on the ground that they are unsupported by sufficient or competent evidence. *Calandra*, 414 U.S. at 338, 94 S.Ct. 613; *Costello*, 350 U.S. at 363–64, 76 S.Ct. 406; *Lawn v. United States*, 355 U.S. 339, 350, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

 It is certainly true, as Elliot argues, that a narcotics conspiracy must be premised on an illicit agreement between

at least two culpable people. Therefore, if there are only two coconspirators, they may not be in a buyer-seller relationship nor may one be a police officer or agent. *See United States v. Gore*, 154 F.3d 34, 40 (2d Cir.1998); *United States v. Smith*, 757 F.2d 1161, 1167 (11th Cir.1985). Elliot couples this premise with conclusions that the grand jury only considered evidence of his illicit agreement with an undercover police officer or one in a buyer-seller relationship, and indicted him on the basis of erroneous jury instructions. Those conclusions constitute rank speculation, impermissibly challenge the competency of the evidence before the grand jury and presume unlawful and irregular grand jury proceedings. Elliot has offered no specific facts to buttress his assumptions which would induce the court to conduct an *in camera* review of the grand jury minutes. As the government asserts, Elliot is alleged to have admitted that he and others would distribute the cocaine. That admission is evidence of a cocaine distribution conspiracy.

Accordingly, Elliot's motion seeking judicial review of the grand jury minutes and dismissal of the indictment because of incompetent evidence and improper jury instructions is denied.

## V. *Conclusion*

For the reasons stated, it is hereby

**ORDERED** that the omnibus motion of Kenneth Elliot (*Dkt. No. 10* ) is denied in part, granted in part, and decision reserved in part, as follows:

1. The motion to dismiss the indictment as insufficient pursuant to the Fifth Amendment of the United States Constitution is **DENIED**;

2. The motion to dismiss the indictment because of insufficient evidence be-

fore the grand jury and because of improper legal instructions is **DENIED**;

3. The motion seeking *in camera* review of the grand jury minutes is **DENIED**;

4. Pending a suppression hearing, the court **RESERVES DECISION** on the motion seeking to suppress statements made by Elliot to law enforcement officers;

5. Pending a suppression hearing, the court **RESERVES DECISION** on the motion seeking to suppress evidence seized from the person of Elliot, a vehicle and a house;

6. The motion seeking disclosure of *Brady* material, if any, currently in the possession of the government is **GRANTED**, and consistent with the government's acknowledgment of its disclosure obligations, it is **ORDERED** to continue to promptly disclose such material as it may come into the government's possession or is subject to its knowledge and control;

7. The motion seeking disclosure of evidence pursuant to Rule 404(b) of the Federal Rules of Evidence is **DENIED** since the government asserts that it is aware of no such evidence, but the motion is subject to renewal and/or a motion to preclude should the government discover such evidence and fail to file a notice of its intention to use such evidence within one (1) week of the date of this decision and order;

8. The motion seeking an order requiring the government to notify the law enforcement agents participating in the investigation of this case to preserve their original notes is **GRANTED**, effective as of the date of the motion return, and the government is **ORDERED** to instruct law enforcement agents to do so;

9. The motion seeking early release of Jencks Act material is **DENIED**, with leave to renew at or after the final pretrial conference;

10. The motion for discovery is granted in part, and denied in part, as follows:

(a) Consistent with the government's agreement at oral argument, and subject to the government's right to seek a protective order, the government is hereby **ORDERED** to disclose all arrest and search warrants and applications, written statements of Elliot or any writing or document reciting statements attributable to him, or the substance of any oral statements made by Elliot to one known by him to be a police officer, and police reports;

(b) The government is **ORDERED** to file a notice of intention to use evidence, and to the extent it possesses, or is aware of such items which are subject to its knowledge and control, is **HEREBY DIRECTED TO DISCLOSE** the following:

(1) all transcripts and/or copies of recordings and all audio/videotape recordings;

(2) all transcript drafts and notes of those who prepared transcripts;

(3) all voice exemplars;

(4) all consensual recordings;

(5) a designation of which recordings, or portions thereof, that will be used by the government at trial;

(6) all recordings relating to arrests, searches, seizures, interrogation, and prosecution; and,

(7) all court documents and transcripts; and,

(c) The motion seeking discovery of internal prosecution memoranda and records regarding the decision to prosecute federally rather than in state courts is **DENIED**; and,

11. Elliot having requested discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure and pursuant to the CPO, **SHALL** provide reciprocal discovery to the government **SEVEN (7)** days after the government complies with the preceding decretal paragraph; and,

12. Elliot's motion seeking to file additional motions is **GRANTED** to the extent such motions relate to issues arising from the government's failure to comply with its obligations pursuant to the CPO, and is **DENIED** to the extent it seeks to relitigate issues already raised in his omnibus motion; and it is further

**ORDERED** that the Clerk of Court shall electronically serve this order on all parties; and it is further

**ORDERED** that the Clerk of Court shall transmit a copy of this decision and order to the Honorable Glenn T. Suddaby, United States Attorney for the Northern District of New York, and to the Honorable Alexander T. Bunin, Federal Defender for the Northern District of New York.

**SO ORDERED.**